# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5583 | **DATE** | 11/26/2002 |
| **CASE TITLE** | Robert J. More vs. R & L Carriers | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report & Recommendation is hereby submitted to Judge Joan B. Gottschall. It is recommended that this case be dismissed with prejudice. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices: 2 |
| ✓ | Notices mailed by judge's staff. | | NOV 2 7 2002 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | 11/26/2002 |
| ✓ | Copy to judge/magistrate judge. | | date mailed notice |

courtroom deputy's initials: FT /resy

FILED
02 NOV 26 AM 11: 25
CLERK U.S. DISTRICT COURT

Date/time received in central Clerk's Office

FT
mailing deputy initials

Document Number
110

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT J. MORE,                    )
                                   )
        Plaintiff,                 )
                                   )
                                   )    No. 00 C 5583
        v.                         )
                                   )    Judge Joan B. Gottschall
R&L CARRIERS, INC.,                )
                                   )
        Defendant.                 )
                                   )    Magistrate Judge
                                   )    Arlander Keys

TO:  THE HONORABLE JOAN B. GOTTSCHALL
     UNITED STATES DISTRICT COURT JUDGE

### REPORT AND RECOMMENDATION

In his lawsuit against his former employer, Plaintiff Robert
J. More has repeatedly ignored court imposed deadlines, refused to
comply with discovery orders, and generally exhibited a lack of
respect for the judicial system.  The Court is of the opinion that
Mr. More's lawsuit should be dismissed with prejudice, and
recommends that the district court refer the matter to the
Executive Committee for the Northern District of Illinois with a
recommendation that Mr. More be barred from filing further actions
at the taxpayers' expense.

### RELEVANT FACTS

On June 16, 1999, Mr. More began working as a probationary
line haul driver for R&L Carriers, Inc ("R&L").  On July 21, 1999,
prior to the completion of his 90-day probationary period, R&L

terminated Mr. More, allegedly because of a culmination of complaints regarding Mr. More's hygiene and his use of the two-way truck radio for non-work purposes.

Mr. More disputes that R&L had a legitimate business reason for terminating him, and alleges that his termination was discriminatory. (Compl. ¶ 13(I).) Mr. More claims that he was actually fired for being a "devout Roman Catholic," and alleges that he was "subject to activity and treatment that left the work environment . . . abusive to anyone of Christian convictions."

In support of his religious discrimination claim, Mr. More states that he informed several of Defendant's employees, including supervisor Frank Sheldon, a dispatcher named "Don," and terminal manager Todd Smith, that he adhered to the principles of the Roman Catholic religion and would be unable to perform or otherwise engage in activities that were contrary to his religious beliefs. (Compl. ¶ 13(II).) Mr. More claims that he repeatedly volunteered input and advice to R&L on how to conduct its business in a legal and moral manner. (Id.)

Mr. More accuses R&L employees, particularly Mr. Smith, of making frequent derogatory remarks about his religion. For example, after Mr. Smith discovered that Mr. More had attended the University of Notre Dame, Mr. Smith allegedly told him that "I won't hold it against you that you went to Notre Dame." (Id.) On July 8, 1999, Mr. Smith purportedly referred to a football player

being recruited by Notre Dame as playing for "this *Catholic* (with a distinctive and not at all approving emphasis on the term) high school." (*Id.*) On another occasion, Mr. Smith allegedly commented on the sexual activities of certain individuals affiliated with Notre Dame, including a female booster who was "doing Notre Dame's DBs." (*Id.*)

Mr. More claims that, in an effort to dissuade Mr. Smith from making additional inappropriate remarks, he "made a comment through a dispatcher" relating to his religion and the "requirement of righteousness." Shortly thereafter, Mr. Smith allegedly told Mr. More that he should consider working for a telephone sex line company. (*Id.*)

Mr. More claims that he notified the corporate office of his concern about having to work without the "legally mandated 8 hours rest break." (Compl. ¶ 13(II)). Randy Russell, who worked in "safety," purportedly told Mr. More that he would "look into it," but the next day, he scolded Mr. More for "operating outside of the Department of Transportation rules." (*Id.*)    On July 21, 1999, R&L terminated Mr. More.

## PROCEDURAL HISTORY

On approximately May 17, 2000, Mr. More filed charges of discrimination against R&L with the United States Equal Employment Opportunity Commission (the "EEOC"). (Compl. ¶ 7.) Mr. More received a right to sue letter from the EEOC, and subsequently

filed suit against R&L, under Title VII of the Civil Rights Act of 1964 ("Title VII").[1] (Compl. ¶ 8.) The case was assigned to Judge Gottschall, and referred to this Court for purposes of settlement and discovery. Mr. More claims that R&L terminated him because of his religion, and failed to reasonably accommodate his religion. (Compl. ¶¶ 9, 12.)

Mr. More's original complaint (the "Complaint") also named as Defendants R&L Transfer, Inc., Ralph Roberts, Michael Murray, Todd Smith, Frank Sheldon, and Robert Russell. However, on August 15, 2001, Judge Gottschall dismissed R&L Transfer, Inc. and the above-referenced individual defendants (the individuals are hereinafter referred to as the "Dismissed Parties") from this case. (See, More v. R&L Carriers, Inc., No. 00-C-5583, Minute Order Granting Motion to Dismiss Certain Defendants (N.D. Ill. August 15, 2001)). The only remaining Defendant is R&L Carriers, Inc[2].

---

[1] Mr. More has also filed various charges against the Defendant in other forums, including a defamation claim in the Circuit Court of Cook County and a claim with the Occupational Health and Safety Administration ("OSHA"), alleging that Defendant has violated various United States Department of Transportation rules. (See, Def.'s Mem. Opp. to Pl.'s Mot. to Amend at 4.) The Cook County State's Attorney's Office has filed a telephone harassment charge against Mr. More, which is currently pending before the Circuit Court of Cook County. (Id. at 5.)

[2] Mr. More also sought leave to amend his Complaint to add the following parties as Defendants: (1) the Dismissed Parties; (2) DAC Services, a driver referral service; (3) the law firm of Fagel & Haber and its attorneys Floyd Babbitt, Richard Bruen, Sheryl Allenson and John Cullerton (collectively, "Defendant's Attorneys"); (4) United States Secretary of Labor Elaine L. Chao, United States Department of Labor Administrative Law Judge John

Throughout the course of this litigation, Mr. More has filed a number of frivolous "motions" that demonstrate his total disregard for the authority of the federal courts, and a personal contempt for the judges before whom he has appeared. [3] Some of Mr. More's more colorful motions demand that the Court "take notice" of the numerous frivolous and irrelevant issues that he has raised; notify the court that he is going to add 365 days to every court deadline, should he deem it necessary; threaten "vigilantism and domestic insurrection/slave uprising" should the court refuse to grant the relief he is requesting; and concede that his goal in filing lawsuits is "never to win a case," because "no human judge, nor any other human party for that matter is the ultimate authority for RJM (Robert J. More)." *See, e.g.,* Mr. More's 9/6/02 Motion for

---

Holmes, United States Department of Labor Administrative Review Board Members Cynthia Atwood and Richard Beverly; and (5) United States Secretary of Transportation Norman Y. Mineta and the United States Department of Transportation. This Court denied the Motion on July 22, 2002. After requesting and obtaining several extensions of time within which to file objections to this Court's July 22, 2002 Order, Mr. More failed to file objections.

[3] Although Mr. More frequently resorts to outlandish characterizations or biblical condemnations when referring to jurists he dislikes, *see, e.g.,* Mr. More's 8/30/02 Motion at p. 1 (in discussing Judge Gottschall, Mr. More states that "this seems to be exactly what so many conservative scribes lamented would be one of the most costly and lamentable of all the tragic legacies of the Clinton Presidency - judicial despotism & criminality that it would require another insurrection to correct."), at other times he is more civil. For example, he has informed this Court on more than one occasion that he would simply seek to have his case voluntarily dismissed, and later refile it, in an attempt to have the case assigned to a more hospitable jurist, such as Judge Alesia.

a filing that incorporates all of these[4]. For purposes of this Report, however, the Court will focus upon Mr. More's filings, responses, and conduct in relation to his Rule 26(a)(1) disclosures and his response (or lack thereof) to Defendant's First Set of Interrogatories.

On August 2, 2002, -- twenty-three months after the case was filed and over the strenuous objections of Mr. More - this Court ordered the parties to comply with Fed. R. Civ. P. 26(a)(1) by August 16, 2002. On that date, Mr. More sent opposing counsel an email, approximately 2 ½ pages in length and single spaced, which failed to identify any individual likely to have discoverable information, failed to describe any documents or tangible things in his possession that might support his claim, and failed to compute the damages he is seeking. On August 19, 2002, R&L filed a Motion to Compel the Rule 26(a)(1) disclosures within 7 days, and requesting that the Court impose sanctions for continued non-compliance. R&L also served Mr. More with its First Set of Interrogatories and First Request to Produce on August 19, 2002.

On August 26, 2002, this Court held a hearing on R&L's Motion to Compel. In his prior filings and at the hearing, Mr. More indicated that he had thoroughly researched Rule 26(a)(1), and was aware of the Rule's requirements. The Court ordered Mr. More to

---

[4] Mr. More delivered this "motion" to the Court on the evening of 9/5/02, but identifies the motion as being filed on 9/6/02.

identify the relevant witnesses, along with their phone numbers and addresses; to submit the supporting documents in his possession; and to outline the damages he allegedly suffered at Defendant's hands, on or before August 30, 2002. The Court warned Mr. More that failure to comply with the Order could result in a recommendation that the case be dismissed for want of prosecution and for failure to comply with court orders.

Despite the warning, Mr. More failed to make the required disclosures. Instead, on September 5, 2002, Mr. More filed a motion, indicating that he would not comply with Rule 26(a)'s requirements and this Court's Order unless and until certain conditions were met. For example, Mr. More's motion insisted that he could not properly participate in discovery unless the Court adopts his "Proposed Reliance Formula," which discusses the use of supporting authority and moral justification, or otherwise imposes a "structure" – one of Mr. More's favorite terms – on the proceedings. *See* 9/5/02 Motion at p. 7.

Mr. More appeared before the Court on September 6, 2002 to discuss his failure to comply. Mr. More conceded his recalcitrance, and indicated to the Court that he would not comply with the Court's order, because the Court had failed to address the "laundry list" of issues he had raised at a previous hearing. Transcript of 9/6/02 hearing at p.4. Mr. More further informed the Court that he would not make the disclosures until the Court first

entered a protective order. *Id.* at p. 7. Later in the hearing, Mr. More presented the Court with a proposition: Mr. More would make the required Rule 26 disclosures, but, in exchange, the Court would have to acknowledge that it (and presumably its Order compelling the disclosures) was the proximate cause of Mr. More's damages if he should later lose the case. *Id.* at 40-41.

The Court listened to Mr. More and attempted to address his reasonable questions for more than 45 minutes. During that time, Mr. More admitted that he would not comply with any court order that he disagreed with and/or that was not, in his opinion, well reasoned. *See* 9/6/02 transcript at pp. 12, 17, and 52. Although scoffing at the authority of most judges in this district, Mr. More stated that he would be inclined to accept rulings from Judges Manion and Alesia, because of their religious inclinations and/or stances on issues such as sodomy. *See* 9/6/02 transcript at pp.35-37. Despite the Court's repeated attempts to limit the discussion to the discovery issue at hand, Mr. More pressed his own incoherent agenda.

With little progress being made, the Court finally ended the hearing. Before doing so, the Court explained to Mr. More, in no uncertain terms, that, if he did not make his Rule 26 disclosures on or before September 9, 2002, the Court would recommend to Judge Gottschall that the case be dismissed.

The parties returned to court on September 11, 2002, for a hearing that lasted more than two hours[5]. Mr. More had apparently made some disclosures to R&L, revealing the names of potential witnesses, but he failed to identify the witnesses' phone numbers and addresses. Mr. More ultimately stated that he did not have access to this information; extracting this relatively straightforward information from Mr. More was arduous.

But it was Mr. More's familiar diatribe against the judicial system, corporate America, Lex Rex, the Reign of Terror, and America's contemporary slavery society that dominated the hearing. He attacked the Court's authority to issue orders that he does not first deem to be "rationally grounded logically tenably linguistically acceptable," etc., *see, e.g.,* transcript of 9/11/02 hearing at p. 63, and again informed the Court that the litigation was going to proceed according to deadlines he determined to be appropriate. *See, e.g., id.* at pp. 117-19. Mr. More once again informed the Court that he was still seeking a "structure formula" or a "reliance formula," *id.* at p.13, and explained to the Court that he has an (unstated) obligation to God, family, baptized

---

[5] Mr. More asked the Court to postpone the hearing until Judge Gottschall ruled on one of Mr. More's motions. During the hearing, the Court discovered that Judge Gottschall had, in fact, already denied the motion, but that Mr. More simply did not accept the ruling. *See* transcript of 9/11/02 hearing at pp. 42-43.

members of the Catholic Church, etc. *Id.* at p. 14.[6] Finally, Mr. More made thinly veiled threats to resort to violence and/or vigilante justice if he were unable to achieve his goals in a court of law. *See, e.g., id.* at pp. 6-8, 119-20.

Despite the Court's willingness to devote more than two hours to a routine discovery motion, Mr. More was dissatisfied that the Court would not proceed with the "laundry list" of irrelevant issues that he wished to discuss. The Court concluded the hearing, despite Mr. More's objection, explaining to Mr. More that his response to R&L's Interrogatories was due on September 23, 2002.

Not surprisingly, Mr. More failed to respond to R&L's interrogatories in a timely fashion, forcing R&L to file a Motion to Compel written discovery on September 27, 2002. In the interim, however, Mr. More found the time to file a number of irrelevant papers, which frequently accused this Court and Judge Gottschall of official corruption and threatened to file criminal charges and to seek a Writ of Mandamus from the Seventh Circuit. *See, e.g.,* 9/17/02 Motion at p. 2, ¶¶ 6-9.

On October 7, 2002, this Court granted Defendant's Motion to Compel, directing Mr. More to respond no later than October 14,

---

[6] Mr. More makes repeated references to acting on behalf of the "slave-peasants" in the United states, noting that the "U.S. is not by any means, a non-slave country at this juncture." 9/5/02 Motion at p. 2; or on behalf of the "millions of others that are also declaring themselves unwilling to countenance slavery" 9/17/02 Motion at p. 3; or to prevent the Timothy McVeighs, etc., of the world.

2002. The next day, Mr. More hand delivered to chambers a "Verified Motion," claiming that he could not comply with the Court's Order compelling his responses, because the Seventh Circuit had imposed a sanction upon him, which prohibited him from filing any papers with the Clerk's Offices in the Seventh Circuit until he paid a $100 fine. He stated that, for moral reasons, he would not pay the sanction because to do so, "would be an unjustified concession to the reign of terror" which he perceives as being practiced by the courts in this building. The Court rejected Mr. More's claim of futility via Minute Order that same day, explaining that "outstanding interrogatories and document production requests . . ., as plaintiff knows, are not 'filed' with the Clerk's office or the Court," and directing Mr. More to answer said discovery by October 14, 2002. *More v. R&L Carriers, Inc.*, No. 00 C 5583 (Minute Order of October 8, 2002).

The Court's October 14, 2002 deadline came and went without any response from Mr. More. On October 18th, Mr. More appeared before the Court and proffered what he contends are proper discovery responses in open court. The responses were woefully inadequate; a clear case of too little too late.

## RELEVANT BACKGROUND FACTS

The present lawsuit is at least Mr. More's third attempt to hold a former employer liable for religious discrimination, and

other alleged moral wrongs, in this district.[7] A brief discussion of those prior lawsuits, and the Seventh Circuit's treatment of those cases, demonstrates that Mr. More has become well versed in the requirements of federal civil procedure and federal discrimination laws.

In addition, certain patterns of behavior emerge when viewing these cases together. Mr. More's disdain for the judges and authority of the courts in this district is readily apparent. Despite the fact that Mr. More was, in almost all of these cases, admonished about complying with court orders and against filing frivolous papers and motions with the court, he continued to ignore deadlines and to bombard opposing counsel (and the court) with frivolous filings[8]. Mr. More has repeatedly requested that his cases be dismissed with leave to refile at a later date. Mr. More's goal in repeatedly resorting to this tactic is, apparently, to 1) keep the defendants under the pressure of suit, while obviating Mr. More's need to actively (and properly) prosecute his case and/or 2) have one of his cases ultimately assigned to Judge Alesia.

---

[7] Although the Court does not typically discuss a litigant's prior filings or lawsuits, the Court's recommendation that Mr. More be barred from filing future lawsuits in this district at the taxpayers' expense warrants the discussion.

[8] There may be a method to Mr. More's apparent madness; Mr. More has hinted to this Court that he hopes to exhaust his opponent into settlement.

Mr. More's first foray into litigation in this district was a lawsuit that he filed against Roadway Express, Inc. In *More v. Roadway Express, Inc.*, Mr. More sued his former employer for breach of an oral employment contract and for religious discrimination. No. 97 C 6661, 1998 WL 292417 (N.D. Ill. May 19, 1998). After liberally interpreting Mr. More's response to the defendant's Motion for Summary Judgment, Judge Hart entered judgment in favor of the defendant, concluding that Mr. More had failed to comply with the time limits for filing his claim, and had failed to pursue the requisite administrative remedies prior to filing suit. *Id.* at *8.

Judge Hart subsequently denied Mr. More's Motion for Reconsideration, explaining that "natural law, moral law, or religious doctrine" do not take precedence "over what [Mr. More] considers to be the procedural rules of 'legal positivism.'" No. 97 C 6661, 1998 WL 456544, at *1 (N.D. Ill. July 31, 1998). The court further advised Mr. More "that the pursuit of frivolous issues on appeal could result in the imposition of sanctions." *Id.* at *4. Undeterred, Mr. More appealed the ruling, which the Seventh Circuit affirmed in an unpublished decision. No. 98-3195, 1999 WL 147099, at *2 (7th Cir. Ill. Mar. 3, 1999) (rejecting Mr. More's claim that reversal was a "moral imperative," and noting that Mr. More failed to challenge the legal premise for the district court's ruling.)

Mr. More then turned his attention to another former employer, JB Hunt Transport. *More v. JB Hunt Trans. et al.*, No. 99 C 6173. On September 17, 1999, Mr. More filed a complaint alleging, largely, that JB Hunt discriminated against him because of his religion. The case was assigned to Judge Pallmeyer. Shortly thereafter, Mr. More sought a 150 day continuance "to respond to whatever response defendant provides to plaintiff's original complaint." No. 99 C 6173, 2001 WL 1143248, at *1 (N.D. Ill. Sept. 28, 2001). Judge Pallmeyer denied the motion, warning that "[h]aving initiated this lawsuit. [sic] Plaintiff is responsible to proceed promptly absent a specific explanation for delay." *More v. JB Hunt Trans. et al*, No. 99 C 6173 (N.D. Ill. Nov. 30, 1999) (Minute Order denying Plaintiff's Motion for a Continuance.) Nevertheless, Mr. More filed another similar motion, seeking to postpone a scheduled status hearing for at least one month, without explaining why such a delay was warranted. Once again, Judge Pallmeyer denied the motion and cautioned Mr. More that if he was "not prepared to proceed with his lawsuit, he is welcome to dismiss the case without prejudice." *Id.* (N.D. Ill. Mar. 8, 2000) (Minute Order denying Plaintiff's Motion to Postpone.)

Mr. More proceeded to file a number of unusual motions, such as his "Motion for providing some objections and some much needed clarifications," and his "Motion to have Court [sic] reinstate plaintiff in former employment position on an interim basis pending

final rectification of the legally prohibited injustices presumptively present in this case."

Although Mr. More had the resources and time to file a number of unorthodox motions, he was either unwilling or unable to submit a timely response to the defendant's motion for summary judgment. Judge Pallmeyer initially ordered Mr. More to file his response by January 1, 2001, and subsequently extended that deadline not less than four times, to September 14, 2001. Not only did Mr. More repeatedly ignore the court-imposed deadlines, but he ultimately informed the court that he would not file his response until a number of conditions were met. Specifically, Mr. More filed motions "demanding that the court impose some much needed structure on the litigation," "insisting that the court provide [him] a notification of the standard that the court will apply in regard to [his claims]," and finally, requesting that the court commit defendants to an explanation for his termination, before he would file a response to the defendant's summary judgment motion.

On September 27, 2001, Judge Pallmeyer granted the defendant's motion for summary judgment. Mr. More filed a number of inappropriate post-judgment motions, which the court largely

denied. Mr. More appealed,[9] and the Seventh Circuit dismissed the appeal on October 11, 2002.

While his suit against JB Hunt was pending, Mr. More petitioned the Seventh Circuit Court of Appeals to review an Order issued on June 28, 2001, by the United States Department of Labor's Administrative Review Board, in ARB Case No. 01-044. *More v. Administrative Review Board, United States Dept. of Labor,* No. 01-3225 (7th Cir. Aug. 24, 2001). The Seventh Circuit was favored with a full complement of unorthodox motions, including Mr. More's Motion "to permit only Judges whose past activity permits the presumption of their participation in the adjudication of this Case," wherein Mr. More did "respectfully demand that no judge except a judge that has at least the equivalent of a *categorically unblemished defensive record against the abominations of abortion, sodomy & pedophilia* [sic] be permitted to participate in the resolution of this case." *See* Mr. More's 8/22/02 Motion at ¶ 19 (emphasis in the original.)

The Court of Appeals thoughtfully addressed Mr. More's reasonable requests, and frequently defined for Mr. More the limited parameters of relief that the Court could award. *See More v. United States Dept. Of Labor,* No. 01-044 (7th Cir. Aug. 7,

---

[9] The Seventh Circuit remanded the case to the district court for the limited purpose of having the district court issue an order explaining its reasons for granting Mr. More's request to proceed in forma pauperis on appeal, but denying his request for transcripts of the proceedings before the district court.

2002)(Order granting in part and denying in part Mr. More's Motion). The Court repeatedly counseled Mr. More against filing frivolous requests with the Court, and cautioned that further filings could result in sanctions. Judge Wood's August 23, 2002 Order conveyed the Court's final warning, admonishing Mr. More that "any additional frivolous motions or continuing to press for relief that the court has previously declined to grant will be met with sanctions and/or filing restrictions." *Id.* (Order granting motion for extension of time and otherwise denying requested relief.)

Mr. More disregarded the Seventh Circuit's warnings and continued to file frivolous motions. In response, on September 4, 2002, the Court imposed upon Mr. More a $100 fine. Mr. More nevertheless continued to file frivolous papers with the Court, prompting Judge Wood to direct all clerks of the courts in this Circuit to return unfiled any papers submitted by Mr. More. *Id.* (Sept. 19, 2002 Order).

Mr. More was flustered by Judge Wood's ruling, but was equally adamant about not paying the fine. Mr. More claims that Judge Wood "lower[ed] the Hitlerian boom," when she "maliciously & feloniously chose to sanction like the *Reign of Terror Clinton Appointee* that she is would have to have been expected to do if she thought she could get away with it." *See* Mr. More's 10/16/02 Motion (emphasis in the original.) Mr. More has suggested that R&L should pay the fine on his behalf, so that he may continue his cases against them.

17

Mr. More's latest lawsuit in this district was filed, not against a former employer, but against the Village of North Riverside Police Department. *More v. North Riverside P.D., et al.,* No. 02 C 3451 (N.D. Ill. 2002). The origins of this (primarily) Section 1983 action can be traced to an otherwise routine traffic stop, which ultimately escalated into Mr. More filing constitutional and state law charges against virtually every officer and official he came into contact with[10], after he was issued two traffic tickets. On October 15, 2002, Judge Marovich granted Mr. More's Motion to Dismiss, with leave to reinstate once the sanction imposed in the Seventh Circuit's 9/16/02 Order has been paid.

## DISCUSSION

The Federal Rules of Civil procedure delineate a court's power to sanction parties for failing to comply with discovery requests and court orders. Rule 37 authorizes courts to dismiss an action where a party has engaged in conduct that is intentional, deceptive, and undermines the integrity of the court. Rule 37 provides, in pertinent part, as follows:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may

---

[10] For example, Mr. More named the Village of North Riversides' Manager, Prosecutor, and Chief of Police, along with Cook County Sheriff Michael Sheahan, various Cook County Judges, Clerk of the Circuit Court of Cook County Dorothy Brown, and Chief Court Clerk Ed Howard.

> make such orders in regard to the failure as are just, and
> among others the following:
>
> (C) An order striking out pleadings or parts thereof, or
> staying further proceedings until the order is obeyed, or
> dismissing the action or proceeding or any part thereof, or
> rendering a judgment by default against the disobedient party.

Fed. R. Civ. P. 37.

Similarly, Rule 41 authorizes courts to dismiss an action

where the plaintiff demonstrates a pattern of noncompliance and

failure to prosecute. Fed. R. Civ. P. 41(b). *See Roland v. Salem

Contract Carriers, Inc.,* 811 F.2d 1175, 1179 n. 4 (7th Cir. 1987)

(finding that the plaintiff's pattern of delay justified the

district court's dismissal of the action, pursuant to Rule 41(b)).

Dismissal is a serious sanction and is not warranted in every

situation. Seventh Circuit decisions frequently instruct that,

under Rule 37, dismissal is warranted only upon a showing of

willfulness, bad faith, or fault on the part of the sanctioned

party. *See Murry v. Northeast Illinois Regional Commuter Railroad

Corp.,* No. 98 C 1734, 2000 WL 263704, at *3 (N.D. Ill. Feb. 28,

2000) ("Although failure to comply with discovery procedures bring

Rule 37 into play, the reason for the failure is critical in

determining which sanctions are appropriate. The most extreme

sanctions such as dismissal and default judgment should be imposed

only where failure to comply is deliberate and results from bad

faith."); *but see Williams v. Chicago Bd. of Educ.,* 155 F.3d 853,

857 (7th Cir. 1998) (upholding dismissal, absent a finding of

19

willfulness, bad faith, or fault, where there was a "clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing")

Throughout the pendency of this case, Mr. More--in his filings and in his arguments before the Court--has repeatedly challenged the authority of this Court and that of the district court to require his compliance with any order with which he does not agree. He has inundated the Court with numerous so-called "motions"--most of which are *demands*, rather than motions--and apparently believes that courts are obliged to give him an audience to air all of his religious and political views set forth in those demands, for as long as he wishes to argue, even though they have nothing to do with the merits of his case. Mr. More also apparently believes that courts must consider/respond to every issue raised by him in his motions/demands and give him detailed explanations for rulings on them, even though they have nothing to do with the merits of his case. Mr. More has, on several occasions, described himself as the self-appointed representative of "the 265 million Americans who are not members of the slave-master class" (*see* 10/21/02 quasi-motion), and apparently believes that he has a duty to them to impose some sort of moral structure on the courts.

Mr. More has challenged this Court's authority to require him to respond to Defendant's discovery requests, pursuant to a motion to compel, when Defendant's counsel had not met and conferred with

him prior to filing the motion. In that instance, Mr. More had been ordered by the Court to answer Defendant's discovery requests by a specific date. When Mr. More refused to respond, Defendant filed a Motion to Compel. Mr. More took the position that, even in that circumstance, the Court could not entertain Defendant's Motion to Compel until after the parties had met pursuant to Rule 26(f). When the Court ruled that such a meeting would have been futile, especially in view of Mr. More's indication that he had no intention of complying with the Court's Order, Mr. More took the position that the Court had no authority to hear the Motion to Compel. He then accused the Court of, "run[ning] interference for the corporate tortfeasor."

Mr. More has even gone so far as to prepare an "affidavit" for the Court's signature, under oath, which provides, in part, as follows:

> I understand that if RJM now or ever files a criminal complaint against me or sues me or takes any other course of action which I might resent, that such would only be the case because RJM would not see how he could keep from having a grave sin imputed to his record of conduct if he neglected to implement such measure.
>
> . . . . .
>
> I understand that it is RJM's claim that at the most fundamental level--that is at a "bottom scraping" metaphysical level--that his conflict is not w/me or any other human but that it is with the "powers and princi-palities" whose works I have at whatever

21

> measure of culpability facilitated in the
> course of my conduct in regard to the
> processing of case # 00 CV 05583.

10/18/02 Motion, with Biblical references.)(emphasis in the
original.

Mr. More has repeatedly ignored court-imposed deadlines and
court orders to refrain from filing frivolous motions and papers.
Despite numerous warnings regarding the consequences of failing to
make timely disclosures and responses, Mr. More refused to satisfy
his discovery obligations until his declared "conditions[11]" were
satisfied. In doing so, Mr. More has vexatiously delayed the
proceedings, and unnecessarily compounded R&L's cost in defending
this matter.

It is difficult to discern whether Mr. More's recalcitrance is
the result of his disrespect for the court system, his amazing
egocentrism, or is simply a tactic to force Defendant into settling
for an astronomical sum. On more than one occasion, Mr. More
taunted opposing counsel that he could avoid the anguish of reading
Mr. More's frivolous filings, attending protracted hearings, or
litigating under Mr. More's declared schedule by conceding
liability and settling the case. Regardless of which motive

---

[11] Such conditions include the Court explaining the basis for
a previous order or citing to supporting cases, the Court agreeing
to be held liable for any downside resulting from Mr. More's
compliance with discovery rules, or the Court imposing an
unwarranted protective order restricting Defendant's access to Mr.
More's witnesses.

propelled Mr. More, the Court is of the opinion that Mr. More's conduct was intentional and in bad faith. The one thing that is clear from Mr. More's conduct before this Court is that he has no intention of producing evidence in support of his Complaint, and will do whatever he deems necessary to avoid doing so.

In light of Mr. More's *pro se* status, the Court has made certain that Mr. More was fully apprized of his obligations in this matter. The Court has carefully read all of Mr. More's numerous filings -- most of which have nothing to do with the merits of this case and which are littered with irrelevant references to biblical and/or historical figures -- and made itself accessible to Mr. More in an attempt to address his legitimate questions and concerns. Mr. More was given opportunity after opportunity to come into compliance; opportunities that he squandered. Despite the wide latitude afforded to Mr. More, and the repeated warnings to proceed in an appropriate manner, Mr. More continued to thumb his nose at the Court's authority and continued to inundate the Court and Defendant with irrelevant filings. Mr. More's pattern of noncompliance and failure to properly prosecute this case warrant dismissal of his case, with prejudice, under Rules 37 and 41. *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1179 & n. 4 (7th Cir. 1987)(dismissal proper under Rules 37 and 41). The district court may recall that Mr. More has repeatedly requested that he be allowed to voluntarily dismiss the case *without*

prejudice, apparently so that he can refile the case within one year, in the hopes of having it assigned to a more favorable judge.

The Court further recommends that Mr. More be prohibited from filing additional lawsuits in this district at the taxpayers' expense[12]. The judicial process is not a game to be taken lightly. "Frivolous, vexatious and repeated filings by *pro se* litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit and filed by litigants willing to follow court orders." *U.S. ex rel. Verdone v. Circuit Court for Taylor County*, 73 F.3d 669, 671 (7th Cir. 1995) (requiring serial litigant to seek leave to file future pleadings.) Litigants who engage in patterns of frivolous litigation may be restricted or enjoined from making future filings. *Id.* 73 F.3d at 674; *Lysiak v. C.I.R.*, 816 F.2d 311, 313 (7th Cir. 1987) (enjoining pro se litigant from future filings until he paid sanctions.)

Judges need not wait until a litigant has flooded the court with dozens of baseless lawsuits before imposing a filing restriction. Repeatedly ignoring court warnings about frivolous filings, disregarding court-imposed deadlines, and "draining enormous amounts of time and expense from the limited resources of

---

[12] Of course, this presumes that Mr. More pays the sanction imposed upon him by the Seventh Circuit Court of Appeals. Should he choose not to do so – and he has stated that he will not – this issue is moot for a period of at least two years.

both the courts and the named defendants," may justify such a sanction. *Verdone*, 73 F.3d at 672.

Mr. More has not filed dozens of lawsuits in this district. Nevertheless, his abuse of the judicial system warrants the imposition of a filing restriction. Mr. More filed this case more than two years ago, and has resisted every attempt by this Court and Defendant to have him produce evidence supporting his claims. When pressed by the Court to disclose relevant information, Mr. More has asked the Court "what's the rush?", and directed the Court's attention to various other cases that were pending for almost 10 years before achieving resolution. He never once complied with a discovery order in a timely manner, explaining to the Court that he would be adding 365 days to each court imposed deadline. Mr. More's eventual submissions and disclosures were half-hearted and woefully deficient.

Instead of prosecuting his case, Mr. More has used this lawsuit as a soapbox on which to espouse his religious beliefs and political theories. The Court constantly attempted to confine Mr. More's arguments and filings to the merits of his case. But Mr. More showed little interest in advancing the merits of his suit. Mr. More preferred attacking the judiciary, Defendant, and certain sections of American society. Mr. More consumed valuable court time with endless ramblings about various irrelevant historical

figures, the Catholic church, and the "structure" that should be imposed upon this and other courts.

It was no surprise to the Court that Mr. More constantly challenged its authority to preside over this matter. Mr. More has repeatedly stated that no court has authority over him; he does not expect to win the cases he files, and that he does not file these cases to win a judgment[13]. Which begs the question of why, precisely, Mr. More files these lawsuits. Mr. More has provided the Court with a few clues.

Mr. More claims that he files these lawsuits to satisfy an unidentified duty to his (also unidentified) "burden-bearing associates and allies," and in an attempt to preserve his moral standing. Mr. More explains that his goal is "always to preserve claims in equity & natural law justice, through the entirety of an adjudication, so that whether protagonist RJM prevail [sic] or get the usual shafting [sic], the claim is morally preserved; in the case that it is not immediately won - to be later liquidated in a formal established forum or in the forum of vigilantism, & domestic insurrection/slave uprising - this focus removes some of the cost(s) from the process - because from this point of reference, the only effect of the conduct of others over whom one has no control [presumably, the courts] is that it requires RJM to respond

---

[13] Mr. More informed the Court that his motions are only "incidentally directed towards the Court." Mr. More's 9/6/02 Motion at p. 3.

26

according to such points of reference . . so as to preserve the claim(s), which can be accomplished no matter what anyone else does, [s]o long as RJM does not abandon the claim" and to "Lucifer-proof" his claims. Mr. More's 9/6/02 Motion at pp. 2-4.

The judiciary's role is not to assist Mr. More in preserving his moral claims. Given Mr. More's stated refusal to be bound by court orders and his outrageous conduct, it is unconscionable to permit Mr. More to continue wasting judicial resources at the taxpayers' expense. *See Free v. United States,* 879 F.2d 1535, 1536 (7th Cir. 1989) (ruling that the litigant abused the judicial process in the classic sense, by using the courts to "pursue ends other than vindication of claims believed to be meritorious"); *see also Patillo v. North American Van Lines,* No. 02-2162-JWL, 2002 WL 1162684, at *1 (D. Kan. April 15, 2002) ("Proceeding *in forma pauperis* in a civil case 'is a privilege, not a right ~ fundamental or otherwise.'")(citations omitted.)

While the Constitution protects Mr. More's right to hold dear his beliefs, it does not guarantee him a subsidy to repeatedly disrupt the orderly administration of justice in furtherance of those beliefs. *See generally In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). This Court is of the opinion that the cost of Mr. More's repeated and frivolous use of the judicial system should no longer be borne by the tax payers.

Any injunction limiting Mr. More's ability to file suit *in forma pauperis* should heed the Seventh Circuit's warning that "[p]erpetual orders are generally a mistake," *Support Sys. Int'l, Inc. v. Mack,* 45 F.3d 185, 186 (7th Cir. 1995), and incorporate safeguards to permit Mr. More to file in certain extraordinary instances. *See, e.g., Ketchum v. Cruz,* 775 F. Supp. 1399, App. B (D. Color. 1991) *aff'd* 961 F.2d 916 (10th Cir. 1992).

### CONCLUSION

For the reasons set forth above, the Court recommends that this case be dismissed with prejudice. The Court also recommends that the district court take measures to prevent Mr. More from filing additional lawsuits in this district *in forma pauperis*.

DATED:    November 26, 2002          RESPECTFULLY SUBMITTED:

_____
ARLANDER KEYS
United States Magistrate Judge

The parties have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Joan B. Gottschall. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir. 1990). Mr. More should note that his ability to file objections depends on whether he complies with the Order of the Seventh Circuit Court of Appeals that he pay the $100.00 sanction imposed by its Order of September 4, 2002.